Judge Underwood
delivered the opinion of the court.
Davis Caldwell, being pressed for money by executions, applied to Joel P. Williams to obtain it, when the following arrangement was made. Williams, as guardian for John P. Morris, had on hand, commonwealth’s bank notes, which he wished to convert into specie, or its equivalent, for the purpose of paying his ward, who would attain full age in a few weeks. It was thereupon agreed that Williams would advance the commonwealth’s notes; that Caldwell should execute a note for their amount payable in dollars; that Williams should assign the note to Morris, his ward, who was at liberty to sue immediately; obtain judgment, and by refusing to endorse his execution, that banknotes might be received in payment; compel Caldwell to replevy the demand for two years, and at the end of that time, collect specie from him.
Caldwell, accordingly, on the 29th July, 1822, gave his note, with George Caldwell as surety, for $2425, payable one day after date. Williams assigned it to Morris, who, in less than a month, instituted suit upon the note, obtained a judgment, and ctuised the Cald-wells to replevy for two years. The replevin bond having become due, execution was taken out upon it, and Caldwell being pressed, and the whole amount; about to be collected in lawful money of the United States, the Caldwell’s filed their bill, charging the transaction to be usurious, and praying that Morris might be compelled to receive notes on the bank of the commonwealth, in paj merit, and for general relief. A decided preponderance of testimony shows that notes of the bank of the commonwealth were, at the date of the note, only worth, in gold or silver, half their nominal amount. It is also proved, that Morris knew of the advance in bank notes by his guardian Williams, as above, before the note was assigned to him. Williams, in his answer, insists that there was no usury in the transaction; but, that it was a fair sale of the commonwealth’s bank notes; Morris, in his answer, professes to be ignorant, and they bo^h *694 refuse lo accept notes on the bank of the- commonwealth in payment. Subsequently, howevei, Williams proposed to accept bank notes in payment. To this proposition, the Caldwells answer, and say, that he has no authority to make it .for Morris, and that they have paid half the debt in lawful money, and that the proposition to take paper comes too late,. Subsequent to this, Morris slates, that Williams had authority to agree to accept paper; and that he, Morris, is yet willing to take it, and as to the payment made in lawful money, he proposes that the difference between that and commonwealth’s bank notes at the time payment was made, to-wit: about 25 per cent should be allowed as a credit to the complainants.
Reservation of interest on commonwealth’s money advanced, is evidence that transaction was a loan, and not a sale of the paper.
The, circuit court perpetuated the injunction for half the amount of the' replevin bond, and we think, correctly. We regard the transaction as tainted with Usury, and we look upon the suit, judgment, and re-plevin bond for two years, all which seems to have been agreed upon beforehand, as mere devices to evade the statute.
The transaction was, in effect, to secure to Williams, or his ward, $2425, with interest for that amount, advanced in depreciated paper. The Caldwells could not possibly gain by the contract in the appreciation of the paper; foi\if it had immediately become equal to specie, they were bound to pay the full amount, and interest upon ■ it. Williams could not lose, and having made an arrangement, by which he secured interest upon his advance, we think it ought to be regarded as a loan and not a sale. We were disposed to think that equity required under the circumstances of this case, the enforcement, of the offer made in the bill, to pay in notes on the bank of the commonwealth. Under that impression, a superce-deas was granted. But upon a more thorough investigation of the record, w.e have determined not to reverse the decree on that account. The defendants In the bill, now plaintiffs in error, rejected the offer when made by the complainants, and thereis no proof that Morris, the assignee, and legal owner of the judgment and replevin bond, consented to take paper, o.r bank notes, upon any terms, until after the sheriff had collected half the replevin bond in specie, and then *695 bis consent was Only given by proposing to allow the complainants credit for the difference between the value of specie and paper, at the time the specie was -collected. If the defendants had promptly met the proposition of the complainants, and assented to it, we should have considered the question as presented in a very different aspect from that it now assumes,. They have delayed, until probably tlfey began to distrust their cause,and then agreed to meet the proposition of the complainants, under certain modifications, after half the debt bad been collected, and when commonwealth’s paper might have appreciated and become more valuable than it was when the complainants offered to pay it, or rather asked the chancellor to compel the defendants to receive it. The bill was filed in January, 1825. In July, 1826, Morris agrees to accept bank notes upon certain terms. If is oiler comes too late.
Cunningham, Mills and Brown, for Plaintiffs; Harlan, for defendants.
The decree is affirmed with costs.